The next case for argument is Hinkle v. Neal, Appeal No. 21-2067, and we'll be hearing first from Mr. Brown and then from Mr. Banks. Mr. Brown, go ahead. Good morning. May it please the Court, Attorney Russell Brown on behalf of the appellant James Hinkle. The first point of contention is whether or not the Union of Courts of Appeal can address Mr. Hinkle's constitutional claim. All right. Mr. Brown? Yes, sir. I at least am having trouble picking up your audio. Can you hear me? Can you hear me better? Yes. Very good. I apologize. Don't move. The first point of contention is whether or not the Union of Courts of Appeal can address Mr. Hinkle's constitutional claim. I think perhaps he needs to slow down just a bit, then we can pick it up. Slow down and get a little closer to the microphone. We'll, in essence, say start over, and please let's just restart the clock, okay? Thank you, Your Honor. All right, let's try this again. Attorney Russell Brown on behalf of the appellant James Hinkle, the first point of contention is whether or not the Union of Courts of Appeals address Mr. Hinkle's constitutional claim, and the issue there is whether or not the pre-AEDPA standard of de novo review would apply to Mr. Hinkle's habeas petition. It's Mr. Hinkle's position that the Indiana Court of Appeals did not address his constitutional claim, despite the, in his appeal, his direct appeal in the Supreme Court, despite him clearly indicating as an issue that his right to a complete defense, his constitutional right to a complete defense was violated. The Indiana Court of Appeals rephrased his issue as whether or not the trial court abused its discretion in admitting evidence. It did not address anywhere of Mr. Hinkle's constitutional claim. Mr. Brown, Judge Miller here grapples with this and makes reference to Hyser, H-Y-S-E-R, and the Indiana Court of Appeals handling of Hyser, and it's a reference to the complete defense. What is your position with regard to that incorporation of Hyser into the Indiana Court of Appeals opinion? Yes, Your Honor, and Hyser, while Hyser did address the constitutional claim and constitutional violation, the Indiana Court of Appeals, in this particular case, citation to Hyser was only for facts purposes. The only thing that the Indiana Court of Appeals did in Hinkle's opinion is cite to Hyser's facts were distinguishable to those of Hinkle. It did not address any of the legal arguments and or the standard of review that should have been applied to a constitutional claim. So I believe that the the Court of Appeals' reliance upon Hyser and the state's argument that because the Court of Appeals cited to Hyser that they then addressed Hinkle's constitutional claim is off base. Mr. Brown, on that point, the appellate brief for Mr. Hinkle in the Indiana Review of Abuse of Discretion to this question of evidence, I don't see, maybe I missed it, but in that brief where he argues for the more stringent standard of review that you're arguing would have been appropriate. Yes, Your Honor, and that is correct. Your Honor's review is accurate on that issue. But it's while while that was Mr. Hinkle's position at the time of the standard of review, the Indiana law is quite clear from the Indiana Supreme Court citing Spears v. State that a constitutional violation is reviewed de novo. It is not the abuse of discretion standard that is more deferential to the trial court level. And that's why it's also clear from the Court of Appeals' opinion that they did not address the constitutional violation. They only addressed the issue under the Indiana law on whether or not the evidence was admissible under evidentiary standards. I understand how you might conclude then that it wasn't presented but then or not decided by the Indiana Court of Appeals. But then the question would arise, well, was it fairly presented as a constitutional claim calling for de novo review in the State Court of Appeals? Your Honor, respectfully, Mr. Hinkle contends that it was fairly presented because the issues were couched in the way of a constitutional violation to complete it or to present a complete defense. The brief was replete with citations to federal law, to federal cases, again, citing to Mr. Hinkle's right to complete or to present a complete defense. So the Court of Appeals, Indiana Court of Appeals, was well aware of what Mr. Hinkle's claim was and that being a constitutional claim, not a violation of evidentiary standards. So even if or if the court believes that the de novo standard of review applies, we still have to address of whether or not Mr. Hinkle's constitutional rights were violated. Here he was not able to present the complete defense. In almost all sex cases, the facts and circumstances surrounding of when an allegation is alleged or disclosed is extremely important. It provides context to what the alleged victim, when they disclose this information. That's crucial to a jury's determination on the credibility of that circumstances around when S.B., the alleged victim in the case, first disclosed these allegations. And because of that, as Mr. Hinkle's trial counsel, who had substantial experience both in prosecuting and defending child molest cases, she testified in the PCR hearing that based upon her experience, the jury always wants to know the question why. If you are claiming that this child is making these allegations up, why would they do that? Why would they go through this entire process with all the embarrassment and humiliation if just to make up these allegations? Mr. Hinkle had evidence, reasonable, logical answer to that question that he attempted to present to the jury and he was failed and he was prohibited from doing so. But it's not speculation. The state wants to say that Mr. Hinkle was speculating on S.B.'s intent. It's not. Mr. Brown, why isn't this a confrontation clause issue here? Why doesn't the confrontation clause precedent apply? It could be couched in the way of the confrontational issue. However, based upon how it was presented to the trial court and the state level and the appellate court, it was couched as a failure to or prohibition on a complete defense. Well, presenting, being able to cross-examine to probe motivation is a part of presenting a complete defense. So those two things are not mutually exclusive. And I agree, Your Honor. Based upon the the present, I guess the presentation, it is more, Mr. Hinkle contends it's more so of the complete defense under the Sixth Amendment as opposed to merely a confrontational issue. I'm not sure you want to call that merely. Agreed, Your Honor. Agreed. So, Mr. Hinkle, the jury that convicted Mr. Hinkle was not presented with the facts and evidence that SB disclosed this for the first time when he was being confronted about his drug use, that he was being told by his uncle and his grandmother that he was going to be locked down. And the reasonable inferences from that testimony could be the jury could have seen that as, well, this is why he's making these allegations, because he doesn't want to be locked down. He's confronted by his drug use, by his uncle and his grandmother. So he is trying to play the victim card and get the eyes off of him and put it on Mr. Hinkle. Because of that, Mr. Hinkle's constitutional right to present a complete defense was violated, and it cannot be deemed to be that. Again, the key issue in the state's conviction was credibility, and Mr. Hinkle was not able to attack the credibility of SB. Your Honors, I see that my time is up. Thank you very much for your time. Thank you very much. For Appellee State, Mr. Banks. Thank you, and may it please the Court. The District Court correctly denied habeas relief, and that denial should be affirmed. The State Court's decision essentially held that there was little to no factual basis to substantiate Hinkle's theory of the victim's motive to fabricate, and thus admitting evidence of the victim's drug use had so little probative value that the Sixth Amendment did not require it to be admitted. The Sixth Amendment, at a minimum, requires evidence to be more than marginally relevant and permits exclusion of evidence that is overly prejudicial. The State Court did not unreasonably apply federal law by holding this evidence inadmissible, and Mr. Hinkle is not being held in custody in violation of any federal constitutional right. This Court should so hold and affirm the denial of habeas relief. Are you sure that we must defer to a relevancy determination as a factual finding? I think that it is not a purely a fact-bound, and when it comes to questions of relevancy, the context is always important. But it certainly, of the legal questions raised under Rules 401 to 403 in the state evidence rules, it certainly is a very fact-bound conclusion. And to the extent you're asking about whether deference under the habeas statute applies, it does. It seems that some of the all evidence claims in Indiana, whether the basis of the claim of error is constitutional or not, are reviewed for an abuse of discretion. Now, when it comes to legal questions for, let's say, a constitutional claim, de novo will look at legal conclusions. But, and in this case, that actually, while the State Court did not exactly say the words de novo, it's cited to a case called Gilmette v. State, which is an Indiana Supreme Court case, judging the admission of evidence under the Fourth Amendment, and it explicitly states de novo review. But in addition, Mr. Hinkle has not shown that his claim was, constitutional claim, was very clearly overlooked, which is his burden. It was raised in the trial court as a Sixth Amendment claim. It was raised in all the briefing as a Sixth Amendment claim. There was a discussion of Davis v. Alaska in his reply brief. The State Court extensively quoted a case, Heiser, that's directly dealing with the Sixth Amendment right to present a meaningful defense. And then that citation to Gilmette, Your Honor, Gilmette, Your Honors, and additionally, and this was a factor that came in in Johnson, Williams, Johnson v. Williams, Mr. Hinkle never claimed in State Court, either in his petition for rehearing or in his petition to transfer to the Indiana Supreme Court, that his claim, his constitutional claim, was overlooked. All of this is good evidence and frankly better evidence than what the Supreme Court had in Johnson v. Williams to say that the Sixth Amendment claim was decided on its merits, or adjudicated on the merits, and therefore deference under Section 2254 applies. And the State Court did not unreasonably apply Sixth Amendment jurisprudence. For the Sixth Amendment to require evidence to be admitted as vital to a defense, it must be more than marginally relevant, and it must not be overly prejudicial. The State Court here simply recognized that Mr. Hinkle's theory about the victim's motive to fabricate had a flimsy factual basis, and given the evidence of the victim's drug use would be overly prejudicial. The evidence had insufficient probative value to require its admission. Well, I'll tell you, Mr. Banks, if at least if I were the trial judge, I'd have some trouble with that, because I understood the State Courts to be saying, well, there was never any appropriate linkage shown between the accusations of sexual abuse and this boy's drug use issues. At least the way I understand this case came together, it was S.B. who brought that linkage himself, by raising his complaints in the discussion of the drug use and the family's response to it. Given his, maybe I'm misunderstanding, but given his apparent linkage of those two issues by bringing them together, why is this unreasonably speculative? For a couple reasons, Your Honor. First, you're correct on the facts. There was this open family discussion where the victim disclosed and was honest with his family of the majority of his drug use, and then there was the disclosure that Mr. Hinkle had been molesting him. That's the relationship they share, is that one occurred before the other. And notably, Your Honor, Mr. Hinkle was given plenty of opportunity in the trial court to make a stronger connection. He never asked S.B. whether the open family discussion about drug use had any effect, correlation, or impact on his decision to disclose the molestation allegations. There's not even a question in the record, Your Honor, of whether S.B. harbored any ill will or other thoughts that would cause him to- Could there need to be? Earlier, consider an employment discrimination case. We allow inferences of improper intent and bias based on the circumstances. It may or may not be a good idea to ask the person you're accusing of bias or dishonesty to confess to that. Let me add to that. In that context, we also allow timing to allow us to draw inferences in the employment context. So, why wouldn't the timing of S.B.'s disclosure be relevant here? And let me address, I only bring up the questions that were not asked and the foundation that was made, merely to show that what Mr. Hinkle wanted here was not merely to provide this motive to fabricate. He wanted to put S.B.'s drug use before the jury, and that was overly prejudicial compared to the only, whatever marginal relevance was provided by the timing of how these come together. And the timing alone was- Let me step back one layer. The state court did not unreasonably apply federal law by finding that the timing of an allegation alone was sufficient to supply a motive to fabricate, and that the Sixth Amendment, the Constitution, requires admission. In no U.S. Supreme Court case has that been the case. In the cases that come closest to this one, in Davis and Van Arsdale, you have a motivation to lie that was provided by state coercion. That's when the Sixth Amendment can get involved. Here, it's not happenstance, but the only reason I can't say it's not happenstance is because no foundation was developed to know why these two things came after each other. And even should this court disagree with us on whether deference applies and disagree on the constitutional question, any error was harmless. Mr. Hinkle was not completely denied the opportunity to present a defense, and he presented multiple more convincing and more persuasive forms of impeachment evidence. He had the victim admit that he played family members off of each other. He had the victim admit that he manipulated his mother and that he was, quote, really good at lying to his mother and grandmother. The jury also heard of three prior convictions that he had for theft offenses. Additionally, his grandmother said he had been dishonest with her. And in addition to all of that impeachment evidence, Mr. Hinkle's wife testified to contradict the victim's timelines and to say that Hinkle never had the opportunity to commit the crimes that were alleged. So all of this evidence, when the key issue here was credibility, Mr. Hinkle had many tools and used all of them that were admissible to attack this victim's credibility. So in any event, this is harmless error, but state believes that the state court decided this case on the merits that deference should apply and that the Indiana Court of Appeals did not unreasonably apply Sixth Amendment jurisprudence. And if this court has no further questions, we ask that you affirm the denial of habeas relief. Thank you. Thank you, Mr. Banks. Mr. Brown, I think your time has expired, but if you need a brief moment for rebuttal, put one minute on the clock. Thank you, Your Honor. I just want to, I just want to conclude by the state in this case used the trial court's decision of prohibiting this evidence as both a sword, as both a shield and a sword. The state didn't allow Mr. Hinkle to bring up this evidence, but then in the closing argument, the deputy prosecuting attorney made reference to SB and why he would go through this humiliation of going through this entire process when the easiest thing for him to do was just to indicate that it didn't happen. So that's the exact reason, the answering that provable why the rhetorical question of why that is this evidence that does that for the jury. So it was precluded from Mr. Hinkle talking about it, but then the deputy prosecuting attorney and her closing argument made reference to it. Based upon that, Your Honors, we respectfully request that this court revoke the decision of the district court and order a writ issue condition on a new trial. Thank you very much. Thank you, Your Honor. Thanks to both counsel. The case will be taken under advisory.